MOORE, ADMX., *v.* FARMERS STATE & SAVINGS BANK OF OXFORD, OHIO.

(Decided November 15, 1933.)

*Messrs. Shotts & Millikin,* for plaintiff in error.
*Mr. W. C. Shepherd,* for defendant in error.
*Messrs. Williams, Sohngen, Fitton & Pierce, amici curiæ.*

HAMILTON, P. J.   Plaintiff in error was plaintiff below and defendant in error was defendant below, and will here be referred to as plaintiff and defendant.

The substance of the petition is that, as administratrix, plaintiff, in the administration of the estate of Hugh M. Moore, deceased, paid to the defendant several sums of money on notes held against her intestate, which were claims against the estate. She claims that the defendant was not entitled to receive from her as administratrix the payments upon its claims; that at the time she made the payments she supposed the estate of her intestate, Hugh M. Moore, to be solvent, and that the estate had sufficient assets to pay all indebtedness due and owing from the estate, but that since the date of all such payments said estate has become insolvent and there are not sufficient assets belonging to the estate out of which to pay costs of administration, funeral expenses, and other preferred claims; that even if the sums paid to the defendant were repaid to plaintiff, she would not have sufficient assets upon the final settlement and distribution of said estate to make the defendant any payment upon its claim. She, therefore, as such administratrix asks judgment for the return of the sums paid, amounting in all to $1,627.50, with interest.

Defendant in its answer, following the general denial, alleges that the plaintiff believed that under the last will and testament of Jeanetta Z. Gilchrist, her said decedent, Hugh M. Moore, had a fee simple title to certain real estate, and believed the same descended to her as the sole heir at law of the said Hugh M.

Moore under the law of descent. She took possession of said property as such sole heir at law, collected the rents therefrom, and from the rents so collected voluntarily paid to this defendant the various sums set out in her petition. Thereafter, she as administratrix filed her petition to sell the real estate to pay debts, setting out that the said Hugh M. Moore died seized of the real estate, and that it was necessary to sell the same to pay the debts of the decedent. Such proceedings were had in the estate to sell the property to pay debts that the court found that the said Hugh M. Moore's title in the real estate terminated at his death.

The answer further alleges that the real estate and the income therefrom were not, and never were, assets of the estate of Hugh M. Moore; that the payments made to this defendant by the plaintiff were not any part of the assets of the estate of Hugh M. Moore, and were not paid out by the administratrix as such; and that said administratrix has no right to recover said payments for the use and benefit of the estate. It alleges that the payments were made under a mistake of law, and that said administratrix is not entitled to recover thereon.

The trial court found for the defendant and entered judgment. From that judgment, the plaintiff administratrix prosecutes error to this court.

Two questions are presented: *First,* has Elizabeth B. Moore as administratrix a right to maintain this action in her representative capacity? *Second,* was the payment by the administratrix made under a mistake of law?

Concerning the question, has the plaintiff the right as administratrix to maintain this action, the plaintiff relies on three Ohio cases. The first is *Rogers* v. *Weaver,* 5 Ohio, 536, which holds that where an administrator, supposing an estate solvent, pays a cred-

itor beyond his distributive share, he may upon final settlement recover back the difference in an action.

Under the facts alleged in the petition this case would be directly in point. The petition alleges the payments out of assets of the estate, believing the estate solvent. If the money paid were assets of the estate, lawfully received as such, under the authority of *Rogers* v. *Weaver, supra,* the administratrix could maintain the action. A different situation entirely is made by the answer.

No reply was filed to the answer, and the facts therein alleged must be taken as true, with the exception that the allegation that the money was paid under a mistake of law could be considered as a legal conclusion.

The law question might have been presented on demurrer to the answer, but the case was heard on the evidence in the trial court, and is here on the merits.

Plaintiff in the brief cites *Phillips, Exr.,* v. *McConica, Gdn.,* 59 Ohio St., 1, 51 N. E., 445, 69 Am. St. Rep., 753, both on the question of the right to maintain the action and the question of mistake. The *Phillips case* holds: ''An action to recover back money paid out by an executor upon distribution, by mistake, is properly brought in the name of such executor in his official capacity.''

This presupposes the money paid out to be the lawful property of the estate, and is not an aid in the determination of the question before us on the point. If the money paid out by the plaintiff to the defendant had been paid out of assets of the estate, the *Phillips case* would be in point.

The case of *Conger, Admr.,* v. *Atwood,* 28 Ohio St., 134, 22 Am. Rep., 462, is relied upon by plaintiff in support of her right to maintain the action. The question before the court in the *Conger case,* as set forth in the third paragraph of the syllabus, is: ''If the administrator has collected the rents to which the

widow is so entitled, and has appropriated them to the payment of debts due from his intestate, she may elect to charge him in either his personal or representative character, and he can not defeat a recovery by her in an action against him in his representative capacity, on the ground that he is personally liable therefor.''

The question there was whether or not the person to whom the money belonged could sue the administrator in his representative capacity, or was she limited to an action against him in person. The court held she may elect to charge him in either his personal or representative capacity. It will be noted that this was an action brought by the person, the rightful owner of the money, against the administrator. The reason for this holding is set forth by the quotation in the opinion from Williams' Work on Executors: "Again, a plaintiff may, in many cases, have an advantage in proceeding against the assets rather than against the executor personally; the executor, in his individual capacity, may be insolvent; in his character of executor, he may have assets adequate to answer any claim; and when the money is paid to his use, as executor, justice seems to require that the person who has made the payment should have the liberty of looking to the fund which the executor has in that character.''

This shows the reasoning of the court in holding that one entitled to the money may hold the estate or the executor personally.

In none of the cases cited has it been held, or even suggested, that where the administrator pays out money voluntarily he may recover it back in an action, as an administrator, except where the payments were made out of assets belonging to the estate under a mistake of fact.

The plaintiff relies on the *Conger case* as supporting her on the proposition that the rents collected were held as assets of the estate. It is true that in the course

of the opinion the court states: "The administrator, therefore, regarded the rents as assets of the estate, and used them accordingly." This statement is followed, however, by the statement: "Though not strictly assets, they practically became such by the voluntary act of the administrator." The court seems to have used the phrase that they may be regarded as assets of the estate in order to logically support the proposition that the rightful owner of the money could hold the administrator. The exigencies of the case seem to have justified the statement that, although not strictly assets, they practically "became such by the voluntary act of the administrator."

In the case before us we are not dealing with the right of the true owner of the property. There is nothing to indicate to the court that the true owner is interested in this action. It would seem that the administratrix might be anticipating the liability to the true owner and endeavoring to fortify herself by reclaiming the money, in order to liquidate the claim of the real owner in case that claim is made. The money can never become the property of the estate in the payment of debts or distribution. Should the administratrix recover the same, and the true owner not make a claim, she would profit by reason of the payment, to the damage of the defendant, who received the money in good faith in payment of its claim.

We have therefore concluded that the plaintiff had no right to maintain the action in her representative capacity. This would be sufficient to require an affirmance of the judgment. However, we will give our view on the next proposition: Was the money paid under a mistake of law or a mistake of fact?

If the money was paid under a mistake of law, had she the right to maintain this action she could not recover it back. This was held in the case of *Phillips* v. *McConica, supra.* Under the allegations of the answer,

Elizabeth B. Moore knew of the last will and testament of Jeanetta Z. Gilchrist. She believed that her decedent, Hugh M. Moore, had a fee-simple title to the real estate, and she believed that she was the sole heir at law of Hugh M. Moore, and under the law of descent, Moore having died intestate, she believed she inherited the property as sole heir at law of Hugh M. Moore, subject, however, to the payment of the debts of Moore. So believing, she collected the rents therefrom and voluntarily paid the defendant's claims against the estate. Relying on her construction of the will and the law of descent, without having the question tested in court, she brought an action to sell the real estate for the payment of these debts, and in that proceeding for the first time she discovered that she was wrong under her construction of the will, and that decedent Hugh M. Moore's title and interest in the real estate terminated at his death.

These facts seem to us to bring the case within the case of *Phillips* v. *McConica, supra,* where the court states:

"The petition sets out that he believed that Mary [McConica] inherited the legacy of Wilbert, and that he paid the money to the guardian under a mistake of his rights and duties as executor, and which he was under no legal or moral obligation to pay.

"This states no mistake of fact, but of law. So far as the petition discloses, he knew all the facts, but was mistaken as to his rights and duties, that is, as to the law of the case." Citing *Thompson* v. *Thompson,* 18 Ohio St., 73.

In *Cincinnati* v. *Gas Light & Coke Co.,* 53 Ohio St., 278, 41 N. E., 239, the court held: "A payment made by reason of a wrong construction of the terms of a contract, is not made under a mistake of fact, but under a mistake of law, and if voluntary cannot be recovered back."

In the *Phillips case* the court in the opinion states: "The executor had the right to obtain the judgment of the court as to the proper person to receive this money * * * *. But, knowing all the facts, he did not seek the direction of the court, but relying upon his own judgment, paid the money at his own peril."

In the case before us the administratrix relied upon her own judgment as to the legal effect of the will of Jeanetta Z. Gilchrist, and construed it to mean that Hugh M. Moore took a fee-simple title. She voluntarily acted thereon, and collected and paid the money voluntarily.

Our conclusion is that the mistake is one of law, and that had she the right to maintain the action she could not recover for the reason that the payment was under a mistake of law and not of fact.

*Judgment affirmed.*

Ross, J., concurs.

## IN RE DIEHL, JUDGE.